UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOHN WEIGEL, As Distribution Trustee of the
JNL/Forgione Distribution Trust,

                            Appellant,

                 -against-

R. KENNETH BARNARD, As Chapter 7 Trustee,

                         Appellee.

-----------------------------------------------------------------X

**MEMORANDUM &
ORDER**
CV 20-3570 (GRB)

FILED
CLERK

12:26 pm, Aug 26, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**GARY R. BROWN, United States District Judge:**

       This converted Chapter 11 case comes before the Court on an appeal from a Decision and

Order of the United States Bankruptcy Court for the Eastern District of New York issued by the

Honorable Alan S. Trust on July 13, 2021 in the above-referenced adversary proceeding.  In the

Decision and Order, the Bankruptcy Court granted a motion filed by R. Kenneth Barnard, as

Chapter 7 Trustee, for disgorgement of compensation paid to John Weigel, as Distribution

Trustee of the JNL/Forgione Distribution Trust established under a confirmed Chapter 11 plan

pursuant to Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a).  For the reasons set forth

below, the Court affirms the Bankruptcy Court's Decision and Order in all respects.

## BACKGROUND

       Familiarity with the record of the Bankruptcy Court in the underlying proceedings is

assumed.  The following facts and procedural history are derived from the parties' briefs and the

bankruptcy record on appeal.

       On May 14, 2010, JNL Funding Corp. ("JNL") commenced the underlying bankruptcy

proceeding by filing a voluntary petition for relief under Chapter 11 of the United States

Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code").  Docket Entry ("DE") 2-1.

On the same day, Joseph G. Forgione ("Forgione"), principal of JNL, also filed for relief under

Chapter 11 in a separate action.  DE 2 at 39.  On October 27, 2010, the Bankruptcy Court entered

an order authorizing the joint administration of the JNL and Forgione cases.  DE 2 at 44.

On June 30, 2011, the Bankruptcy Court entered an order confirming the Amended Joint

Plan of Reorganization of JNL and Forgione (the "Plan" and the "Confirmation Order").  *Id*. at

6-29.  The Plan established, *inter alia*, a Liquidating Trust and a Distribution Trust.  *Id*.  Pursuant

to the terms of the JNL/Forgione Distribution Trust Agreement (the "Distribution Trust

Agreement"), the Distribution Trust was to be funded with payments from the Liquidating Trust

aggregating $1.5 million and payments from Forgione aggregating $1 million for distribution to

creditors and professionals and to otherwise implement the Plan.  *Id*. at 379-400.  In addition, the

Distribution Trust was required by statute to pay Post-Confirmation Quarterly Fees to the United

States Trustee.  *Id*.  Paragraph 31 of the Confirmation Order provided in pertinent part:

> During the period from the Effective Date until such time as the Final Decree has been
> (which the Debtors shall seek to have entered no earlier than the end of the third quarter
> of 2011) entered, or until the entry of Orders by this Court dismissing these Chapter 11
> Cases or converting these Chapter 11 cases to another chapter under the Bankruptcy
> Code (the "Post-Effective Date Period"), the applicable quarterly fees imposed pursuant
> to 28 U.S.C. § 1930(a)(6) (the "Post-Effective Date Quarterly Fees") payable to the
> United States Trustee's office shall be paid as follows: (i) commencing on the Effective
> Date and through  the end of the third quarter of 2011, TFC shall pay the Post-
> Confirmation Quarterly Fees imposed for such period(s); (ii) *commencing in the fourth*
> *quarter of 2011 and continuing through the end of the Post-Effective Date Period, the*
> *Liquidation Trust and the Distribution Trust shall pay the Post-Effective Date Quarterly*
> *Fees that are imposed for such period(s) and are attributable to disbursements made by*
> *their respective Trust*; and (iii) commencing in the fourth quarter of 2011 and continuing
> through the end of the Post-Effective Date Period, the Debtors shall pay the Post-
> Effective Date Quarterly Fees that are imposed for such period(s) and that are attributable
> to their respective disbursements.

*Id*. at 23-24, ¶ 31 (emphasis added).  Paragraph 3.9 of the Distribution Trust Agreement

provided:

> The Distribution Trust Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Distribution Trust that are required by any governmental authority.

*Id*. at 388, ¶ 3.9.

The Bankruptcy Court appointed appellant John Weigel ("Weigel") as Trustee of the Distribution Trust.  *Id*. at 380.  Under Weigel's direction, between 2011 and 2017 the Distribution Trust distributed all funds paid to it under the Plan, including administrative fees aggregating $378,049.69.[1]  *Id*. at 228.  Weigel did not pay any Post-Confirmation Fees to the Office of the United States Trustee nor did he file any quarterly operating or disbursement reports as required by the Plan.  *Id*. at 464.

On October 4, 2017, the Bankruptcy Court sent an email to counsel for JNL, the Distribution Trust and the United States Trustee directing Debtors to file a letter on the docket regarding whether the case was ready for entry of a final decree.  *Id*. at 41.  On October 18, 2017, JNL filed a letter noting that a final decree had been entered in the Forgione's Chapter 11 case and representing that it was unaware of any matter that would prohibit the entry of a final decree in the JNL case.  *Id*. at 34-35.  On November 9, 2017, however, the United States Trustee filed a letter stating that no operating or disbursement reports had been filed and no quarterly fees had been paid to the United States Trustee since the second quarter of 2012.  *Id*. at 38.  The Bankruptcy Court held a hearing on January 3, 2018, and counsel for JNL, the Distribution Trust, and the Office of the United States Trustee appeared.  *Id*. at 41.  The Court determined that a final decree could not be entered until, among other things, the amount of disbursements pursuant to the Confirmation Order had been accounted for and the quarterly fees owed to the

---

[1] The filed Quarterly Operating reports indicated that during the Post-Confirmation Administration Period, the fees paid were as follows: $90,926.90 to Weigel, $189,559.54 to the attorneys, and $97,563.25 to the accountants.  *Id*. at 228.

Office of the United States Trustee under the Plan and 28 U.S.C. § 1930(a)(6) had been calculated and paid.  *Id.*

The Bankruptcy Court held two adjourned hearings,[2] and on May 9, 2018 the Court entered an order directing, *inter alia*, that the Distribution Trust file a report no later than June 13, 2019 setting forth (i) the quarterly amounts disbursed from the period of the third quarter of 2011 through the last disbursement that was made pursuant to the Confirmation Order; (ii) the amount of the Post-Effective Date Quarterly Fees due under the Plan; and (iii) the plan for payment of any such amounts due under the Plan.  *Id.* at 39-43 (the "Compliance Order").  In addition, the Court further ordered that if the parties' responsible for payment of the Post-Effective Date Quarterly fees were not able to document all applicable Plan disbursements and make arrangements with the United States Trustee for payment of amounts due under the Plan, they shall on June 20, 2018 show cause why the JNL case should not be converted to Chapter 7 pursuant to 11 U.S.C. § 1112(b)(4)(E), (F), (K), (N).  *Id.*  The Distribution Trust failed to comply with the Bankruptcy Court's Compliance Order.  *Id.* at 47-48.

On June 20, 2018, the Bankruptcy Court held a hearing at which the United States Trustee and counsel for the Distribution Trust appeared.  *Id.* at 48.  The Court concluded there was sufficient cause established to support the conversion of the Chapter 11 case pursuant to 11 U.S.C. § 1112(b)(4)(E), (F), (K), (N), including the failure of the Distribution Trust to comply with its obligations under the Plan and the Confirmation Order which constituted a failure to comply with an order of the Bankruptcy Court under § 1112(b)(4)(E) and a material default with respect to a confirmed plan under § 1112(b)(4)(N).  *Id.* at 44-49.  The Bankruptcy Court entered

---

[2] On February 21, 2018, the Bankruptcy Court held an adjourned hearing at which counsel for JNL, the Distribution Trust, and the Office of the United States Trustee appeared.  *Id.* at 42. On April 11, 2018, the Court held an adjourned hearing at which counsel for the Office of the United States Trustee appeared.  *Id.*

an order dated June 22, 2018 converting the case to one under Chapter 7 of the Bankruptcy Code

(the "Conversion Order") and appointed appellee R. Kenneth Barnard as Chapter 7 Trustee.[3]  *Id.*

In the Conversion Order, Judge Trust reiterated his findings that  (i) the Distribution Trust had

failed to comply with its obligations under the Plan and Confirmation Order, including the

failure to pay the quarterly fees of the  United States Trustee and file monthly operating reports;

and (ii) the failures constituted "a failure to comply with an order of the court under §

1112(b)(4)(E), and a material default with respect to a confirmed plan under § 1112(b)(4)(N).

*Id*. at 48.  Distribution Trustee Weigel did not appeal the Conversion Order.

By letter dated June 29, 2018, Chapter 7 Trustee Barnard requested that Chapter 11

Trustee Weigel turn over all funds held as Distribution Trustee as well as all books and records

maintained for the Distribution Trust.  *Id.* at 54.  When Barnard did not receive a response from

Weigel, the Chapter 7 Trustee filed a motion in the Bankruptcy Court on July 12, 2018 for an

order directing the turnover of estate property and the filing of certified quarterly operating

statements by the Chapter 11 Distribution Trustee.  *Id.* at 50-56.  Weigel opposed the motion.  *Id.*

at 57-61.  On October 16, 2018, Judge Trust ordered Distribution Trustee Weigel to (i) file

properly certified quarterly operating reports for each quarter between June 24, 2011 and the date

of the Conversion Order by October 23, 2018; and (ii) turn over to the Chapter 7 Trustee all

books and records of the Debtor and all property of the estate in his possession, custody or

control by October 30, 2018.  *Id.* at 62-63.  On October 22, 2018, Weigel filed the delinquent

Quarterly Operating Reports for the period commencing September 2011 through September

2017.  *Id.* at 4, 64-221.

Upon review of the Quarterly Operating Reports, the United States Trustee determined

---

[3] On June 22, 2018, prior to the entering the Conversion Order, the Bankruptcy Court directed that the joint
administration of JNL with the Forgione case be discontinued.  DE 1-1 at 3 n.4.

that Distribution Trustee Weigel had failed to pay quarterly fees in the amount of $21,125.00.

DE 5 at 9.  Because no funds remained in the estate to pay the fees to the United States Trustee,

the Chapter 7 Trustee filed a motion in the Bankruptcy Court on February 8, 2019 for an order

directing Weigel to disgorge a portion of the compensation paid to him by the Distribution Trust

to pay for (i) the amount of the unpaid quarterly fees to the United States Trustee, *viz*,

$21,125.00, and (ii) the amount of fees and costs incurred by Chapter 7 Trustee Barnard to

compel Weigel to comply with his obligations as Distribution Trustee.  DE 2 at 222-33; 449-61.

On March 8, 2019, Weigel opposed the motion, objecting to the request for disgorgement on

numerous grounds.  *Id*. at 340-55.

On July 31, 2020, Judge Trust rendered a Decision and Order granting the motion for

disgorgement and directing Weigel to pay the sum of $30,000.00 to the Chapter 7 Trustee, of

which $21,125.00 would be disbursed to the United States Trustee for unpaid Quarterly Fees,

and the balance held pending consideration of allowable fees and commissions to the Trustee.

*Id*. at 478-85.

On August 4, 2020, Weigel filed a Notice of Appeal of the Decision and Order dated July

31, 2020 in this Court.  DE 1.

The Court has fully considered all the submission of the parties.

## DISCUSSION

### A.  Standard of Review

District Courts have appellate jurisdiction over "final judgments, orders, and decrees" of

a bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).  *See* 28 U.S.C. § 158(a)(1).  A district

court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it

may remand with instructions for further proceedings.  Fed. R. Bank. P. 8013.  On appeal, a

district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.  *See In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007); *see also Odums, III v. Wells Fargo, N.A.*, No. CV 20-1100 (AMD), 2021 WL 918323, at *2 (E.D.N.Y. Mar. 10, 2021).

"A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *District Lodge 26, Int'l Ass'n of Machinists & Aeorspace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010) (internal quotation marks and citations omitted).  The clearly erroneous standard requires "strong deference" to "findings of fact based on credibility assessments of witnesses [the court] has heard testify." *In re Pisculli*, 426 B.R. 52, 59 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011).  Moreover, "[a]n appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court might give the facts another construction [and] resolve the ambiguities differently." *Id.* at 68 (alterations in original).  Finally, "[d]iscretionary rulings of a bankruptcy court are reviewed for abuse of discretion." *In re Sterling,* 737 F. App'x 52, 53 (2d Cir. 2018) (citations omitted).

## B.  Appeal

On appeal, Weigel  challenges the Bankruptcy Court's Decision and Order dated July 31, 2020, granting Chapter 7 Trustee Barnard's motion for disgorgement of compensation paid to Weigel as Distribution Trustee of the JNL/Forgione Distribution Trust established under a confirmed Chapter 11 plan.  DE 4, 7.  Weigel argues principally that the Bankruptcy Court lacked the authority to order disgorgement of final fee compensation pursuant to 11 U.S.C. § 105.  *Id.*  Specifically, Weigel raises essentially the same arguments on appeal that he set forth in his opposition to the motion for disgorgement before the Bankruptcy Court, to wit:  (i) the

Bankruptcy Code does not provide the remedy of disgorgement in the event of administrative insolvency; (ii) his professional fees were not subject to disgorgement because the fees were final payments under the Plan and not interim fees under 11 U.S.C. § 331; (iii) he had a mistaken, good faith belief that the Liquidation Trust and Debtors were paying the Quarterly Fees; (iv) the Trust Agreement safeguards him from liability for good faith reasonable mistakes; and (v) disgorgement goes against the very permanency of the Plan.

For the reasons that follow, the Court affirms the Decision and Order of the Bankruptcy Court in all respects.

**C.  The Bankruptcy Court's Jurisdiction**

**(1)  Equitable Powers Under 11 U.S.C. § 105(a)**

Section 105(a) grants the Bankruptcy Court equitable powers to implement the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).  Under Section 105, the Bankruptcy Court has the statutory authority to:

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process.

11 U.S.C. § 105(a).

While the authority granted under Section 105 is equitable and broad, *Marrama v. Citizens Bank of Massachusetts,* 127 S. Ct. 1105, 1112 (2007), "[i]t does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity," *In re Smart World Techs., LLC*, 423 F.3d 166, 184 (2d Cir. 2005) ("The equitable power conferred . . . by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the

purposes of the Code generally, or otherwise to do the right thing") (internal quotation marks and citations omitted) (emphasis in the original).  *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206-07 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").  It is clear, however, that under Section 105(a) the Bankruptcy Court has the equitable power to enforce its orders and judgments.  *See Matter of Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) (holding that the Bankruptcy Code "charges the bankruptcy court with carrying out its orders . . . .  Hence a bankruptcy court plainly ha[s] jurisdiction to interpret and enforce its own prior orders") (internal quotation marks and citations omitted); *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (noting that bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce . . . prior orders").

While disgorgement is an equitable remedy that has been used to "wrest ill-gotten gains from the hands of a wrongdoer," *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993); *see SEC v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90, 102 (2d Cir. 1978) (observing disgorgement "is a method of forcing a defendant to give up the amount by which he was unjustly enriched"), courts have also considered disgorgement of fees as a remedy for breach of fiduciary duties by a bankruptcy professional, *see In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 713 (Bankr. S.D.N.Y. 2008) (noting bankruptcy law "gives a court wide discretion in fixing a remedy for breach of fiduciary duties by a bankruptcy professional.  The available remedies range from sanctions or the refusal, reduction or disgorgement of attorney's fees") (internal citations omitted)).

Here, the Bankruptcy Court exercised its equitable powers to carry out and enforce its prior orders, *viz.*, the Chapter 11 Plan of JNL and the Confirmation Order confirming the Plan. As set forth above, the Plan established the Distribution Trust Agreement, and Weigel was

selected as the Distribution Trustee.  The Confirmation Order expressly provided that the Distribution Trust shall pay the quarterly fees due to the United States Trustee and file the periodic Operating Reports required by the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).[4]

Despite the express requirements of the Confirmation Order and the Distribution Trust Agreement, between Weigel's appointment in 2011 and the conversion of the case to Chapter 7 in 2018, Weigel failed to file any quarterly operating statements nor did he pay any Post-Confirmation Quarterly Fees to the Office of the United States Trustee.  While Weigel pointed to others for the failure, it remained his duty to ensure that the obligations of the Distribution Trust were properly met.  Moreover, Weigel failed to comply with the Bankruptcy Court's May 9, 2018, Compliance Order.  Following a hearing on Weigel's non-compliance, Judge Trust made clear that the failure of the Distribution Trust to comply with its obligations under the Plan and the Confirmation Order constituted a failure to comply with an Order of the Bankruptcy Court under § 1112(b)(4)(E) and a material default with respect to a confirmed plan under § 1112(b)(4)(N), and accordingly resulted in the conversion of this case to Chapter 7 pursuant to 11 U.S.C. § 1112(b)(4)(E), (F), (K), (N).

---

[4] Section 1930(a)(6) requires "a quarterly fee shall be paid to the United States Trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first." 28 U.S.C. § 1930(a)(6).  The statute was clarified by Section 109(d) of Public Law 104-208 (Omnibus Consolidated Appropriations Act, 1997) which states: "notwithstanding any other provision of law, the fees under 28 U.S.C. § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases . . . regardless of confirmation status of their plans" after "enacted in law."  *See Walton v. Ser-Com, Inc.,* 217 B.R. 303 (M.D. Fla. 1997) ("[T]he fees under 28 U.S.C. § 1930(a)(6) continue to accrue post-confirmation until entry of final decree, or dismissal or conversion, whichever occurs earlier").  Post-Confirmation Quarterly Fees are due even if the Plan of Reorganization does not provide for payment of those fees. *See In re Postconfirmation Fees*, 224 B.R. 793 (E.D. Wash. 1998) ("[T]hese U.S. Trustee fees are in the nature of a tax which arises post-confirmation, imposition of which cannot be predicted by or effected by a plan.").  Although the Debtor may cease to exist on confirmation of the plan, the reorganized Debtor is responsible for payment of Post-Confirmation U.S. Trustee Quarterly Fees on all disbursements under the Plan. *See United States Trustee v. Pettibone Corp.,* 251 B.R. 335 (N.D. Ill. 2000).

(2) **Post-Confirmation Authority to Enforce the Provisions of a Confirmed Plan**

Notwithstanding the conversion, Section 1142 of the Bankruptcy Code, entitled

"Implementation of Plan," provides the Bankruptcy Court with continuing jurisdiction to enforce

the provisions of a confirmed Plan of Reorganization and states in relevant part:

> The court may direct the debtor or any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, *and to perform any other act*, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142 (emphasis added).

In this case, the Plan provides for "Retention of Jurisdiction" by the Bankruptcy Court for

numerous purposes, including (i) "[t]o determine any and all controversies and disputes arising

under or related to the Plan, the Liquidating Trust, and/or the Distribution Trust," (ii) "[t]o

construe and enforce any and all provisions of the Plan," and (iii) "[t]o determine any and all

controversies and disputes arising under or related to any settlement of an adversary proceeding

or contested matter approved by the Bankruptcy Court, either before or after entry of the

Confirmation Order."  DE 2-274, ¶ 16.  Moreover, the provisions of the Plan were incorporated

by reference in the Confirmation Order and provided:

> The failure to specifically include any particular provision of the Plan in this Confirmation Order or any further order of the Bankruptcy Court contemplated by this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of the Bankruptcy Court that *the Plan is confirmed in its entirety and incorporated herein by this reference.*

DE 2-303, ¶ 36 (emphasis added).  The Confirmation Order further provided:

> Until these Chapter 11 Cases are closed through the entry of a Final Decree, the Court shall retain jurisdiction pursuant to Bankruptcy Rule 3020(d) to ensure that the provisions and the intent of the Plan are carried out.

DE 2-300, ¶ 32.  In turn, Rule 3020(d) of the Federal Rules of Bankruptcy Procedure provides:

Retained power.  Notwithstanding the entry of the order of confirmation, the court may issue any order necessary to administer the estate.

Fed. R. Bankr. P. 3020(d).

Where, as here, the Plan provides for the retention of jurisdiction, and those provisions are incorporated into a confirmation order, the bankruptcy court has broad authority to enforce the terms of the plan.  *Cf. In re Beta Int'l, Inc.*, 210 B.R. 279, 284 (E.D. Mich. 1996) ("Contrary to the appellant's argument, this court holds that the bankruptcy court incorporated the terms of the plan into its order.  In Article VI, Paragraph B of the plan, the bankruptcy court retained jurisdiction to enforce the terms of the plan"); *Beal Bank, S.S.B. v. Jack's Marine, Inc.,* 201 B.R. 376 (E.D. Pa. 1996) (affirming the bankruptcy court's post-confirmation decision to extend a payment deadline contained in the plan as an exercise of the Court's authority under §§ 1142(b) and 105).  Hence, "a court's authority under § 1142(b) extends to post-confirmation matters concerning implementation or execution of the plan."  *In re Consolidated Pioneer Mortg. Entities*, 248 B.R. 368, 384 (9th Cir. 2000) (citing *In re Johns-Manville Corp.,* 97 B.R. 174 (Bankr. S.D.N.Y. 1989)).  In short, the Bankruptcy Court retained continuing jurisdiction to enforce the terms of its Orders.

### D.  The Bankruptcy Court's Decision Granting the Motion to Disgorge

In considering the motion for disgorgement, Judge Trust first noted nowhere in Weigel's submissions to the Court did Weigel allege that he did not receive adequate funds to pay the Quarterly Fees or that he did not have access to the information required to file the required reports.  Judge Trust next considered the broad language of Section 105(a) and concluded that the Bankruptcy Court may require disgorgement to enforce the Plan and the Court's Confirmation Order when a party who bears the obligation to pay certain costs or expenses under a confirmed Plan and who is entrusted with estate funds to make those payments fails to do so.

12

Finally, as set forth below, Judge Trust carefully examined and considered all of Weigel's

challenges to the disgorgement motion, and in doing so, Judge Trust made clear that the

proceeding for disgorgement was for the sole purpose of enforcing the Court's prior orders:

> Weigel begins by arguing that the disgorgement request must be denied because
> disgorgement is not permitted "to simply remedy administrative insolvency."  However,
> disgorgement is not used here to remedy administrative insolvency; disgorgement is
> sought and allowed to enforce the Plan and Confirmation Order and this Court's
> requirement that the Quarterly Fees be paid, and be paid by Weigel with the funds
> entrusted to him.
>
> Weigel next argues that the request for disgorgement must be denied because his
> compensation was not awarded on an interim basis under § 331, and thus cannot now be
> subject to § 330 scrutiny of interim compensation.  In the alternative, he argues that, even
> if his compensation was "colorable as § 331 interim compensation subject to § 330
> scrutiny," § 330 establishes that his interim fee awards were reasonable and thus cannot
> be reduced.  However, again Weigel misunderstands the nature of the remedy.  This is
> not a proceeding for approval of a professional award; it is a proceeding for disgorgement
> for the purpose of enforcing the Confirmation Order.  As such, §§ 330 and 331 are not
> applicable.
>
> Weigel also argues that the request for disgorgement must be denied because he had a
> mistaken, but good faith, belief that other parties were paying the Quarterly Fees.  In
> support, Weigel states in Paragraph 8 of his Affidavit . . . that he "assumed" that the
> Liquidation Trust and the Debtors were paying the UST Quarterly Fees.  He then insists
> in his Response that, because "the Liquidation Trust and Debtors were making
> distributions to the Distribution Trust, it [was] not unreasonable for [him] to believe that
> the Liquidation Trust and the Debtors were paying the UST Quarterly Fees." (emphasis
> in original).  This argument fails regardless of whether Weigel actually held the belief
> that someone else was paying the fees or filing the reports.  Again, filing the reports and
> paying the U.S. Trustee fees were part of Weigel's obligations as the Distribution
> Trustee.  It is not reasonable for a person charged with fiduciary and court-ordered
> obligations to rely on an unverified assumption that other people were meeting his
> obligations for him.  Although Weigel alleges in Paragraph 8 of his Affidavit that there
> was "confusion" amongst the parties as to who was paying, any such "confusion,"
> especially in the face of the clear language of the Plan and Confirmation Order, does not
> excuse Weigel's failure to obtain clarity on the point during the five plus years that these
> reports were not being filed and the fees not being paid.  Moreover, Weigel does not even
> assert that he made any good faith effort to ascertain whether the Quarterly Fees were
> actually being paid or that the reports were actually being filed; he apparently just
> assumed they were.  Weigel cannot stand on his claimed, mistaken belief as a basis for
> avoiding accountability for his failing to comply with his obligations as the Distribution
> Trustee.

Relatedly, Weigel's argument that the Trust Agreement now "safeguards" him from liability from "good faith, reasonable mistakes" also fails. Setting aside the fact that Weigel's mistaken belief that others were paying the UST Quarterly Fees was not reasonable nor verified in any manner, the Trust Agreement does not strip the Court of its authority to enforce the Plan and Confirmation Order.

Finally, Weigel argues that the request for disgorgement must be denied because a disgorgement directive would interfere with the parties' ability "to rely on the permanency of the plan." This argument plainly inverts the purpose behind the policy of promoting plan permanence; if the plan is not enforced, there is no permanence. Weigel does not assert that he was not obligated to file the report and pay the fees. In fact, he offers no cognizable legal or equitable argument in support of his contention that this Court cannot enforce the Plan or its Confirmation Order through disgorgement. Because the Court is enforcing the Plan and Confirmation Order, it does not find that Weigel breached his fiduciary duties.

DE 2-10 at 5-7.

Based on this record and the parties' submissions, the Court concludes that under the Plan, the Code and the authority of court decisions, the Bankruptcy Court had the equitable power to direct disgorgement for the purpose of enforcing the Plan and Confirmation Order and the Court's requirement that the Quarterly Fees be paid by Weigel with the funds entrusted to him. Furthermore, the record clearly reflects that Judge Trust invested substantial effort and time, applying considerable diligence, thoroughness and fairness to this matter. Accordingly, the Court affirms the Bankruptcy Court's Order in all respects.

**CONCLUSION**

For the foregoing reasons, the Court affirms the rulings of the Bankruptcy Court in all respects. Appellant's appeal is denied with prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

Dated: Central Islip, New York
      August 26, 2021

                                        /s/ Gary R. Brown
                                        HON. GARY R. BROWN
                                        United States District Judge